***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and deceased-employee.
3. Companion Property Casualty Group is the compensation carrier on the risk.
4. The deceased-employee sustained a compensable injury-by-accident on November 7, 2001 that arose out of and in the course of his employment with defendant-employer, and which resulted in his death on November 7, 2001.
5. The average weekly wage of the deceased-employee was $764.25, and the weekly compensation rate is $509.53.
6. Kathy D. Gainey, the widow of deceased-employee, is the only person entitled to receive compensation as a result of the death of her husband. She was the deceased employee's only dependent.
7. Defendants stipulate and agree that Kathy D. Gainey, as widow of deceased-employee, is entitled to compensation based upon the weekly rate of $509.53 for 400 weeks. N.C. Gen. Stat. §§ 97-38 and 97-39. Plaintiff has previously received 42 weeks of compensation, amounting to the sum of $21,400.26, directly from the defendants. Weekly compensation after said 42-week period of time has continued to be paid to Plaintiff under an annuity issued October 1, 2002, which annuity provides for compensation in the sum of $509.53 payable weekly, guaranteed for seven years, beginning October 26, 2002, with the last guaranteed payment of August 29, 2009.
8. A Form 30 has been executed by the parties, and a Form 30D has been submitted to Deputy Commissioner Chapman for approval. This agreement is submitted despite the fact that the parties have not yet agreed on compensation due after the 400-week period of time.
9. Defendant-carrier has paid Kathy D. Gainey the sum of $3,500.00 pursuant to N.C. Gen Stat. § 97-38 for burial expenses.
10. This claim went to mediation August 29, 2003. The mediator, Lawrence B. Shuping, Jr., declared an impasse. Mr. Shuping's fee was $450.00, which sum has been paid by defendants. Plaintiff stipulates and agrees that in the event she is awarded weekly compensation benefits beginning August 29, 2009, a credit for one-half of Mr. Shuping's fee can be taken by defendants at that time.
11. The parties stipulate and agree that Kathy Dixon Gainey on the date of Jerry Ray Gainey's death was unable to support herself because of physical disability, and that Kathy Dixon Gainey has remained unable to support herself because of physical disability since the date of her husband's death through the present date.
12. In addition, the following were admitted into evidence: (a) Industrial Commission Forms; (b) medical records and reports; (c) Statement of Social Security earnings; (d) certificate of death; (e) marriage license; and (f) decedent's funeral bill.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of his death, decedent had been employed by defendant employer for approximately six months as a truck driver. He sustained a compensable injury by accident on November 7, 2001, which resulted in his death when he fell from his truck and suffered a fatal head injury.
2. Decedent had been married to plaintiff, Kathy Dixon Gainey, for almost thirty-two years as of November 7, 2001, the date of his death. They had one daughter, who was an adult and living in her own house. Plaintiff was totally dependent upon decedent for support in November 2001 because she had been diagnosed with rheumatoid arthritis in July 1995 and had been unable to work since 1996. Prior to that time, plaintiff had worked in part-time positions for the local school system as an aide on a school bus for handicapped children and as a self-employed childcare provider. She stopped working in 1996 because of her arthritic condition.
3. Dr. Robert E. Turner, III, a rheumatologist, began treating plaintiff for her rheumatoid arthritis in July 1995 when she was referred to him by her family doctor. He treated her with various anti-inflammatory medications and newer arthritis medicines to the extent that she could afford them. Rheumatoid arthritis is a systemic peripheral polyarthritis due to auto-immune dysfunction. Although it tends to wax and wane, it is a progressive disease. In prescribing medication for plaintiff, Dr. Turner's goal was to slow the progression of her disease. The disease was not a condition that would improve or be cured.
4. At the time of her diagnosis, plaintiff was experiencing pain, swelling and arthritic symptoms in her fingers, wrists, elbows, shoulders, feet, ankles, knees, and jaws. Her rheumatoid arthritis remained active with elevated laboratory results on testing for inflammation. At times it would flare-up with worse symptoms. Overall, plaintiff's condition deteriorated by November 2001, although at a slower rate than it would have without medical treatment. Before his death, decedent bought plaintiff a lift chair to help her rise from a seated position. Otherwise, plaintiff had to push or pull herself upright due to pain and limitation of motion in her knees. As of her last doctor's visit approximately 2 months before the accident, plaintiff was observed to have swelling in her fingers and wrists, rheumatoid nodules over her elbows, limitation of motion of her shoulders and osteoarthritic changes in her knees. Plaintiff's laboratory test results for inflammation were also high. Dr. Turner prescribed some new medications for her on that date and continued to believe that she was disabled.
5. Plaintiff has experienced persistent problems with bending her legs, stooping and climbing steps. As of the date of hearing, she could only walk for approximately ten minutes before her knees and feet started swelling and becoming painful. She continued to have difficulty rising from a seated position and would not cross the street to go to her daughter's house because she could not climb the front steps. Her family helped her with house cleaning and grocery shopping.
6. Plaintiff's condition is expected to worsen with time. Dr. Turner indicated that she would not get better. As he has done with all of his patients with this condition, Dr. Turner has encouraged plaintiff to be active without being overly active since pushing herself too hard could result in worsening of the condition.
7. As of November 7, 2001, plaintiff was unable to work in any capacity and she remained so disabled up to the date of hearing. Her condition was not expected to improve. She was therefore unable to support herself because of physical disability on that date.
8. Defendants have admitted liability for this claim and have been paying death benefits to plaintiff. Defendants have denied, however, plaintiff's claim for benefits beyond the 400-week period on the ground that plaintiff's claim is not ripe for adjudication until the initial 400-week period has expired.
9. Defendants appealed to the Full Commission from the decision of the deputy commissioner granting plaintiff's claim for additional compensation beyond 400 weeks. By the decision herein, defendants are required to continue paying compensation to plaintiff.
10. Plaintiff's counsel has submitted an affidavit itemizing the time expended in this matter representing plaintiff for defendants' appeal to the Full Commission. Due to his experience and expertise, plaintiff's attorney is requesting a fee of $200.00 per hour.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-38 states in pertinent part:
 Compensation payments due on account of death shall be paid for a period of 400 weeks from the date of the death of the employee; provided, however, after said 400-week period in case of a widow or widower who is unable to support herself or himself because of physical or mental disability as of the date of death of the employee, compensation payments shall continue during her or his lifetime or until remarriage.
N.C. Gen. Stat. § 97-38 (2004). This statute provides that the spouse's disability is determined as of the date of the employee's death. There is no statutory requirement that plaintiff wait for the expiration of the 400-week period to determine her entitlement to continuing compensation. It would be impractical for a plaintiff to be required to wait almost 8 years and then come before the Industrial Commission to prove disability 8 years prior. Such a requirement could cause a disruption of compensation while the issue of entitlement to compensation is being litigated. The plain language of N.C. Gen. Stat. § 97-38 requires a continuation of compensation after the 400-week period expires if the plaintiff was physically or mentally disabled at the time of decedent's death. Plaintiff has met this statutory requirement.
2. The question of whether an Industrial Commission award of continuing compensation beyond 400 weeks due to a widow or widower's physical or mental disability at the time of decedent's death may be modified upon defendants' showing of change of condition was not answered in Hedrickv. Southland Corp., 41 N.C. App. 431, 255 S.E.2d 198, cert. denied,298 N.C. 296, 259 S.E.2d 912 (1979) because it was not raised. Defendants have not raised and have no grounds at this time to raise the issue of change of condition in this case. The issue may never arise because plaintiff's condition is progressive and not likely to improve. Therefore, defendants can show no prejudice from an award of compensation to plaintiff beyond 400 weeks in this case. N.C. Gen. Stat. § 97-38.
3. As of November 7, 2001, the date of decedent's death, plaintiff was unable to support herself because of physical disability resulting from rheumatoid arthritis. N.C. Gen. Stat. § 97-38.
4. Plaintiff, decedent's widow, is entitled to compensation for decedent's death at the rate of $509.53 per week for a period of 400 weeks beginning November 8, 2001. Thereafter, plaintiff is entitled to continuing compensation at the rate of $509.50 per week for her lifetime or until her remarriage. Defendants are entitled to a credit for compensation previously paid to plaintiff. N.C. Gen. Stat. § 97-38.
5. Defendants appealed to the Full Commission from the decision of the deputy commissioner granting plaintiff's claim for additional compensation beyond 400 weeks. By the decision herein, defendants are required to continue paying compensation to plaintiff. Defendants should pay plaintiff's attorney fee as a part of costs for this appeal to the Full Commission. Plaintiff's attorney expended 25 hours defending Defendants' appeal to the Full Commission. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation for decedent's death to plaintiff at the rate of $509.53 per week for 400 weeks beginning November 8, 2001 and continuing thereafter for her lifetime or until her remarriage, subject to a credit in favor of defendants for compensation previously paid. Compensation awarded for the initial 400-week period is not subject to the attorney's fee approved in the case at Attorney Gunter's request. The remainder of the compensation, however, is subject to the attorney's fee approved in this case.
2. An attorney's fee in the amount of twenty-five percent of the compensation paid after the initial 400-week period is approved for plaintiff's counsel. Defendant shall pay every fourth check due plaintiff directly to plaintiff's attorney.
3. Additionally, defendants shall pay plaintiff's attorney a reasonable fee as a part of costs for this appeal to the Full Commission. In the discretion of the Full Commission, defendants are ordered to pay to plaintiff's attorney an additional fee of $2,500.00 pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay the costs.
This the ___ day of January 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER